## No. 11,161.

### RHODES v. HARMON, ET AL.

Decided February 2, 1925.

Action in replevin, judgment for defendants.

### *Reversed.*

#### *On Application for Supersedeas.*

1. CHATTEL MORTGAGE—*Possession.* It cannot be said as a matter of law, that the mortgagor can never retain possession as agent for the mortgagee.

2. *Possession.* Evidence reviewed and held sufficient to go to the jury upon the question of possession of the mortgagee within 30 days after the maturity of the indebtedness, and judgment against the mortgagee on a directed verdict, reversed.

*Error to the District Court of Prowers County, Hon. A. F. Hollenbeck, Judge.*

Messrs. ROGERS, JOHNSON & FULLER, Messrs. GOODALE & HORN, for plaintiff in error.

No appearance for defendants in error.

*Department One.*

MR. CHIEF JUSTICE ALLEN delivered the opinion of the court.

THIS is an action in replevin, instituted November 23, 1923, by J. B. Rhodes, the plaintiff in error, against E. W. Harmon and Charles Harmon, individually and as co-partners, and Ed Jones, to recover the possession of certain chattels consisting of gasoline storage tanks, machinery, tools, and fixtures. Upon the trial, at the close of plaintiff's evidence, the court sustained a motion of defendants for a directed verdict in their favor. There was a judgment on such verdict. Plaintiff has sued out this writ, and applies for a supersedeas.

The plaintiff claims to be the owner of, and entitled to the possession of, the property by reason of having been the holder of a note and a chattel mortgage upon the property, and having bid in the property at a foreclosure sale under the mortgage. It appears that the trial court directed a verdict for the defendants upon the theory that plaintiff did no act which would amount to taking possession of the property thirty days after the maturity of the note.

Section 5092, C. L. 1921 provides, among other things, as follows: "The mortgagee of any chattel mortgage, his agent or attorney, shall be allowed thirty days after the maturity of the debt secured by said mortgage, * * * within which to take possession of the mortgaged property, and such mortgage shall during such period of time be good and valid the same as if possession had been taken at maturity; * * *."

The ultimate question to be determined at this time is whether there is sufficient evidence to go to the jury upon the issue of plaintiff's having taken possession of the property within the time allowed by the statute.

On September 14, 1922, one Leslie T. Belt executed and delivered a chattel mortgage upon the property in controversy, to secure a promissory note for $3,500 given to S. N. and W. C. Edgmon, due one year after the date thereof. The mortgage was duly recorded. About thirty days after its execution, which would be long before its maturity, the note was transferred to the plaintiff, J. B. Rhodes.

Within thirty days after the maturity of the note, the mortgage and note were placed in the hands of one Ethan Beavers, a deputy sheriff, with instructions to act as agent of plaintiff in taking possession of the mortgaged chattels, and foreclosing the mortgage. Beavers, in company with plaintiff's attorney, went to the building in which the property in question was located. The building was a garage, or automobile repair shop, and most of the property consisted of machinery and tools used in work upon automobiles. Beavers and plaintiff's attorney found the building in charge of Charles Harmon, one of the defendants herein. Harmon and his brother, E. W., were operating the garage. Beavers informed Charles Harmon that he was foreclosing the chattel mortgage, above described, and had come to take possession of the property. There is evidence that Harmon said the property was there, and pointed out the items as they were read from the mortgage. Beavers informed Harmon that the property was going to be advertised for sale, under the mortgage, and that he was going to have to appoint someone to take charge of the property, and that if it was all right with him (Charles Harmon) he would appoint him custodian of the property. According to the testimony of Beavers, Harmon agreed to become custodian of the property for the plaintiff Rhodes, and said "we will take care of it." Harmon and his brother then continued in possession of

the property. The question is whether they were in possession as the agents of plaintiff. If they agreed to so act, and the evidence on the part of the plaintiff is that they did, then, under the facts as thus far detailed, they were such agents, or Charles Harmon alone was such agent, and plaintiff did have possession.

The trial court in ruling on the motion for a directed verdict, and granting the same on the ground that plaintiff did not take possession, said: "I think the statute contemplates there should be a change of possession, gentlemen. According to this testimony these agents of the plaintiff undertook to take possession, but there was no actual taking of possession when they left the mortgagor in charge. No notice to anybody of any taking of possession."

It seems that the court regarded Charles Harmon as "mortgagor." It cannot be said, as a matter of law, that the mortgagor can never retain possession as agent for the mortgagee. 11 C. J. 586. But Harmon was not a mortgagor at the time. According to the testimony of Beavers, he agreed to become custodian of the property for the plaintiff. Harmon himself, when on the witness stand, testified that neither he nor his brother were claiming any interest in this property at that time. He says they claimed an interest on and after October 22, 1923, which was about two weeks after the time plaintiff's agent, Beavers, went to the building to take possession and appointed Harmon as custodian.

The Harmon brothers were using the property prior to October 22, 1923, and Charles Harmon explains that situation as follows: "Because we had the building rented, leased. If they didn't want the stuff there, they could have moved it."

The Harmon brothers having charge of the building, being tenants thereof, were, in a sense, bailees of whatever property of third persons was left in the garage. Whoever was the owner of the machinery allowed it to remain there. The situation is analogous to that appear-

ing in *Morrison v. McCluer,* 27 Colo. App. 264, 148 Pac. 380. There the property was in the possession of the bailee of the mortgagor. The mortgagee's agent went to such bailee and pointed out the property mortgaged, and appointed the bailee as "custodian to take care of the stuff," and "turned it over to him." It was held that the mortgagee took possession.

The plaintiff's evidence was sufficient to show that plaintiff had taken possession of the property as mortgagee within thirty days after the maturity of the debt secured by the mortgage. It was therefore error to sustain the motion for a directed verdict, and to direct a verdict upon the ground that plaintiff had not taken possession. The court should have submitted the question to the jury, under proper instructions.

The supersedeas is denied, judgment reversed and the cause remanded for new trial.

MR. JUSTICE BURKE and MR. JUSTICE ADAMS concur.